Joseph G. Sansone
Assunta Vivolo
Chevon Walker
Joshua R. Geller
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-0090 (Walker)
Email: WalkerCh@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **COMPLAINT** |
| **-against-** | **26 Civ. 8626** |
| **MUKESH ASUDANI,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Mukesh Asudani ("Asudani" or "Defendant"), alleges as follows:

## SUMMARY

1. This matter concerns insider trading by Asudani in the securities of Adamas Pharmaceuticals, Inc. ("Adamas") ahead of the October 11, 2021 public announcement that Supernus Pharmaceuticals, Inc. ("Supernus") had agreed to acquire Adamas through a tender offer for total consideration of up to $9.10 per share (the "Announcement").

2. At the time of the Announcement, Asudani was a Senior Vice President of Human Resources at a publicly traded pharmaceutical company ("Pharma Company A") that was a competing bidder to acquire Adamas. Through his membership on Pharma Company A's Human Resources Leadership Team, Asudani obtained material nonpublic information ("MNPI") about Pharma Company A's confidential pursuit of Adamas, codenamed "Project Greek" by Pharma Company A.

3. On July 8, 2021, and again on September 30, 2021, Asudani attended internal Pharma Company A meetings at which Pharma Company A's potential acquisition of Adamas was discussed.

4. On October 1, 2021, Asudani liquidated his entire position in Pharma Company A stock.

5. On October 4, 2021, Pharma Company A's Board of Directors held a meeting at which they discussed the potential acquisition of Adamas, and Pharma Company A submitted its best and final offer to acquire Adamas. That same day and the following day, Asudani used the proceeds from his liquidated Pharma Company A stock, along with nearly all the cash in his personal brokerage account, to purchase Adamas stock in that account.

6. On October 4 and 6, 2021, Asudani caused two additional brokerage accounts—one held by his son ("Asudani's Son") and one held by his family friend ("Asudani's Friend")—to purchase Adamas stock as well; by either directing their trading based on the MNPI he had misappropriated from Pharma Company A, or by placing the trades himself using his access to their accounts.

7. Following the October 11, 2021 Announcement, Adamas's stock price increased by approximately 75%, from $4.61 to $8.07 per share. The accounts held by Asudani, Asudani's Son, and Asudani's Friend collectively reaped approximately $78,751 in illegal trading profits.

## VIOLATIONS

8. By virtue of the conduct alleged herein, Asudani violated Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78n(e)] and Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5, 240.14e-3].

9. Unless Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

10. The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Sections 21(d) and 21A [15 U.S.C. §§ 78u(d), 78u-1].

11. The Commission seeks a final judgment: (a) permanently enjoining Asudani from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Asudani to disgorge all ill-gotten gains he received, directly or indirectly, as a result of the violations alleged herein, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5), 78u(d)(7)]; (c) ordering Asudani to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; (d) prohibiting Asudani from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act

Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to Exchange Act Sections 21(d), 21A and 27 [15 U.S.C. §§ 78u(d), 78-1, and 78aa] and 28 U.S.C. § 1331.

13. Asudani, directly and indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

14. Venue lies in this District under Exchange Act Section 27(a) [15 U.S.C. § 78aa(a)] and 28 U.S.C. § 1391(c)(3). Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including trading of securities listed on a stock exchange located within this District. Additionally, Asudani is not resident in the United States.

## DEFENDANT

15. **Asudani**, age 59, resides in Ahmedabad, India. From at least 2020 through 2022, Asudani was employed by Pharma Company A as a Senior Vice President of Human Resources. Following his departure from Pharma Company A in 2022, Asudani served as a human resources executive at an Indian multinational pharmaceutical company, and at an Indian manufacturer of frozen foods and snacks. He currently serves as the CEO of a human resources consulting firm based in India. He has never been associated with any entity registered with the Commission.

## RELATED INDIVIDUALS AND ENTITIES

16. **Asudani's Son** resides at the same address as Asudani in Ahmedabad, India. Asudani's Son maintained an account at a U.S.-based brokerage firm, and that account purchased Adamas shares on October 4, 2021.

17. **Asudani's Friend** resides in Ahmedabad, India, approximately eleven miles from Asudani, and is a friend of Asudani and his family. Asudani's Friend maintained a brokerage account at a U.S.-based brokerage firm, and that account purchased Adamas shares on October 4, 2021. Asudani is listed as the "trusted contact" on this account.

18. **Adamas** was, until its acquisition by Supernus, a Delaware corporation headquartered in Emeryville, California. Adamas's common stock was registered under Exchange Act Section 12(b) and traded on NASDAQ under the symbol "ADMS."

19. **Supernus** is a Delaware corporation headquartered in Rockville, Maryland. On October 11, 2021, Supernus announced that it had agreed to acquire Adamas through a tender offer for total consideration of up to $9.10 per share.

20. **Pharma Company A** is a pharmaceutical company headquartered in New Jersey. Pharma Company A was a competing bidder for Adamas and submitted its best and final offer for Adamas on October 4, 2021. Pharma Company A's common stock is registered under Section 12(b) of the Exchange Act and trades on NASDAQ.

## FACTS

### I. Pharma Company A's Confidential Pursuit of Adamas

21. During 2020 and 2021, Pharma Company A pursued a potential acquisition of Adamas.

22. Pharma Company A treated information about its potential acquisition of Adamas as strictly confidential and used the internal codename "Project Greek" to refer to the potential acquisition.

23. As a Senior Vice President of Human Resources for Pharma Company A, Asudani was a member of Pharma Company A's Human Resources Leadership Team ("HRLT").

24. On July 8, 2021, Asudani attended an HRLT meeting at which the potential acquisition of Adamas and "Project Greek" were discussed.

25. On September 30, 2021, Asudani attended an HRLT meeting (the "September 30 Meeting") at which "Project Greek" was again discussed.

26. At the September 30 Meeting, Asudani learned that Pharma Company A's Board of Directors was to meet the next day, October 1, 2021, to discuss the company's potential acquisition of Adamas and that, if a decision were made by October 4, 2021, the acquisition would proceed right away.

27. On October 4, 2021, Pharma Company A's Board of Directors held a meeting and discussed the company's potential acquisition of Adamas. Later that day, Pharma Company A submitted to Adamas its best and final offer to acquire Adamas, at $8.00 per share.

28. On October 11, 2021, before NASDAQ opened for trading, Supernus announced that it had agreed to acquire Adamas through a tender offer for total consideration of up to $9.10 per share, consisting of $8.10 per share in cash plus a contingent value right of $1.00 per share.

29. On the date of the Announcement, Adamas's stock price increased by $3.46 per share, or approximately 75.1%, from a closing price of $4.61 on October 8, 2021 (the prior trading day) to a closing price of $8.07 on October 11, 2021.

**II. Asudani's Duty of Confidentiality**

30. Throughout 2020 and 2021, Pharma Company A maintained a written internal policy, titled "Insider Trading Compliance Policy," which expressly prohibited employees from trading securities "while in possession of" MNPI obtained through their employment.

31. Throughout the relevant period, Asudani was subject to Pharma Company A's policies and procedures concerning the treatment of confidential information and insider trading.

32. On May 28, 2020, and again on March 12, 2021, Asudani certified that he had reviewed and was familiar with Pharma Company A's Insider Trading Compliance Policy.

**III. Asudani Obtained Material Nonpublic Information and Traded on It**

33. By no later than September 30, 2021, Asudani was aware of material nonpublic information that Adamas was an active target for acquisition.

34. On October 1, 2021, Asudani liquidated his entire position in Pharma Company A stock, generating proceeds of $61,009.

35. On October 4, 2021, Pharma Company A's Board held a meeting and discussed the potential acquisition of Adamas, and Pharma Company A submitted its best and final acquisition offer to Adamas.

36. On October 4 and 5, 2021, Asudani used the $61,009 he obtained by liquidating his Pharma Company A stock, together with nearly all of his remaining cash in his brokerage account, to purchase Adamas stock, ultimately investing $77,216 in Adamas stock—approximately 92% of the value of his brokerage account.

37. Shortly after the Announcement on October 11, 2021, Asudani began selling his Adamas position, and he sold all his Adamas shares by October 27, 2021.

38. As of the close of market trading on October 11, 2021, Asudani's Adamas stock trading had yielded him realized and unrealized gains totaling approximately $52,843.

**IV. Asudani Caused Trading in His Son's Account**

39. On October 4, 2021, Asudani caused purchases of Adamas stock in his son's brokerage account.

40. The purchases of Adamas stock in Asudani's Son's brokerage account on October 4, 2021, were made with approximately 74% of the account's total value at that time.

41. Asudani's Son's brokerage account began purchasing Adamas stock approximately two hours before Asudani's initial purchase of Adamas stock in his own account.

42. Prior to their October 2021 purchases of Adamas stock, both Asudani's account and Asudani's Son's account held Pharma Company A stock, and that stock constituted both accounts' largest equity positions, with another biopharma company constituting both accounts' second-largest equity position.

43. Asudani admitted to Pharma Company A's counsel that his son often makes investments similar to Asudani's, based on Asudani's recommendations.

44. Asudani's Son's account sold its entire Adamas position on October 11, 2021, generating profits of approximately $13,881.

**V. Asudani Caused Trading in His Friend's Account**

45. On October 4 and 6, 2021, Asudani caused purchases of Adamas stock in Asudani's Friend's brokerage account.

46. On October 4 and 6, 2021, Asudani's Friend's brokerage account purchased 3,500 shares of Adamas stock, using approximately 73% of the account's total value at that time.

47. Asudani's Friend's account used proceeds from its sale of Pharma Company A stock toward its purchases of Adamas stock on October 4 and 6, 2021.

48. Prior to its October 2021 purchases of Adamas stock, Pharma Company A stock was the largest equity position held in Asudani's Friend's account; and the same other biopharma company held by Asudani was its second-largest equity position.

49. Asudani's Friend's account sold its Adamas position shortly after the Announcement, realizing profits of approximately $12,027.

50. After the Announcement, Asudani acknowledged to Pharma Company A's counsel that he knows Asudani's Friend, is friends with her husband, and has access to her brokerage account. Asudani is listed as the "trusted contact" on Asudani's Friend's brokerage account.

### VI. Substantial Steps Toward a Tender Offer

51. Between January 2020 and October 4, 2021, Pharma Company A, an offering person within the meaning of Rule 14e-3, had taken substantial steps toward a tender offer for Adamas, including engaging with representatives of Adamas regarding a potential acquisition, engaging legal counsel, submitting offers to acquire Adamas securities in December 2020 and June 2021, and formulating a specific best-and-final offer price that, on October 4, 2021, was discussed by Pharma Company A's Board of Directors and submitted to Adamas.

## FIRST CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

52. The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 50.

53. Asudani, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of the means or instrumentalities of interstate

commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly (i) employed one or more devices, schemes, or artifices to defraud; (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

54. By reason of the foregoing, Asudani, directly or indirectly, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Exchange Act Section 14(e) and Rule 14e-3 Thereunder

55. The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 51.

56. Between January 2020 and October 4, 2021, Pharma Company A, an offering person, took substantial steps to commence or did commence a tender offer for Adamas shares of stock, but the tender offer was not publicly announced during that time.

57. Between July 8, 2021 and October 4, 2021, Defendant was aware of material nonpublic information from Pharma Company A relating to Pharma Company A's tender offer for Adamas shares; knew or had reason to know that this information was nonpublic; knew or had reason to know that this information was acquired directly or indirectly from (a) an offering person, (b) the issuer of the securities sought or to be sought by such tender offer, or (c) any officer, director, partner or employee or any other person acting on behalf of such offering person or such issuer; and purchased or sold, or caused to be purchased or sold, Adamas securities.

58. Asudani, while aware of such material nonpublic information, purchased Adamas securities and caused others to purchase Adamas securities, in violation of Exchange Act Section 14(e) [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

59. By reason of the foregoing, Defendant, directly or indirectly, violated and, unless enjoined, will again violate Exchange Act Section 14(e) [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Asudani and his agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Permanently restraining and enjoining Asudani and his agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, from violating, directly or indirectly, Exchange Act Section 14(e) [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3];

### III.

Ordering Asudani to disgorge all ill-gotten gains he received, directly or indirectly, with prejudgment interest thereon, as a result of the violations alleged herein, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5), 78u(d)(7)];

**IV.**

Ordering Asudani to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1];

**V.**

Prohibiting Asudani from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and

**VI.**

Granting any other and further relief this Court may deem just and proper.

**JURY DEMAND**

The Commission demands a trial by jury.

Dated: New York, New York
September 30, 2026

/s Chevon Walker
Chevon Walker
Joseph G. Sansone
Assunta Vivolo
Joshua R. Geller
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-0090 (Walker)
Email: WalkerCh@sec.gov
*Attorneys for Plaintiff*